UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARK THOMAS MOORE,<br><br>Defendant. | Case No. 22-MJ-269 (RMM) |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

Over the span of one month this past fall, Defendant Mark Thomas Moore inflicted terror inside three D.C. businesses and a Post Office that he robbed at gunpoint. Less than a week after the D.C. spree, he traveled to Arlington and robbed a CVS, again at gunpoint. Defendant fled the CVS and returned to the District, where police found him hiding in bushes near the George Mason Memorial with CVS's money (containing a GPS tracking device) and a large BB gun consistent with the gun used in the D.C. robberies. Police also recovered articles of clothing and a unique bicycle that connected Defendant to the D.C. spree. The Postal Inspection Service was then able to determine that Defendant had left a fingerprint inside the cash drawer during the armed postal robbery. Defendant's brazen commission of five armed robberies in as many weeks demonstrates his dangerousness and the unlikelihood that he would abide by any release conditions set by this Court. Because Defendant poses a demonstrated risk to community safety and is a flight risk, this Court should detain him pending trial under 18 U.S.C. §§ 3142(f)(1)(A) (crime of violence), 3142(f)(1)(e) (felony involving the use of a dangerous weapon), and 3142(f)(2)(A) (risk of flight). The government respectfully requests that this Court consider the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing.

I.      **Procedural History**

On November 28, 2022, Defendant was arrested in the District of Columbia after robbing a CVS in Arlington, Virginia, earlier that morning.  The Office of the Attorney General for the District of Columbia charged him in the D.C. Superior Court with one count of Possession of a BB Gun, in violation of 24 DCMR § 2301.3.  *See* case number 2022 CDC 007071 (D.C. Super. Ct.).  Defendant was then extradited to Arlington County, Virginia, where he was held without bond on state charges for the November 28, 2022, armed robbery of CVS.  *See* case numbers GC22004546-00, GC22004547-00, and GC22004548-00 (Arlington, Va. Gen. Dist. Ct.).

On December 9, 2022, while Defendant was still detained in Arlington, the Honorable Robin M. Meriweather issued a criminal complaint and arrest warrant charging him with three counts of Hobbs Act robbery, in violation of 18 U.S.C § 1951(a), and one count of armed postal robbery, in violation of 18 U.S.C. § 2114(a), for a series of four armed robberies he committed in the District of Columbia between October 21, 2022, and November 22, 2022.

On February 10, 2023, the Arlington prosecutor dismissed the state charges because the November 28, 2022, armed robbery will be federally adopted in the Eastern District of Virginia. Defendant was then arrested pursuant to the December 9, 2022, warrant issued by this Court.

At Defendant's initial appearance on February 13, 2023, the government orally moved for detention, and a detention hearing was scheduled for February 16, 2023.  The government now respectfully submits this memorandum in support of pretrial detention pursuant to the above-referenced provisions of the federal bail statute.

II.     **Legal Authority and Argument**

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal

2

trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id*.; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210, *see also Williams*, 798 F. Supp. at 36.

Under Section 3142(g), the Court must analyze four factors in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the return of the defendant to Court or the safety of the community were he to be released. *See* 18 U.S.C. § 3142(e)(1).

A. **Nature and Circumstances of the Offense Charged**

The nature and circumstances of the offenses charged weigh heavily in favor of detention. As set forth below, between October 21, 2022, and November 22, 2022, Defendant used a large handgun (later determined to be likely a BB gun) to rob two 7-Elevens, a McDonald's, and a U.S.

3

Post Office in the District of Columbia. Less than a week later, he robbed an Arlington, Virginia CVS at gunpoint, and was arrested after fleeing back into the District.

### *October 21, 2022, Armed Robbery of 7-Eleven, 637 Pennsylvania Avenue SE*

On Friday, October 21, 2022, at approximately 9:21 p.m., an armed robbery of the 7-Eleven convenience store located at 637 Pennsylvania Avenue SE, Washington, D.C., occurred. Metropolitan Police Department officers responded and located W-1 and W-2, who are both employees of the store. W-1 stated that they saw the suspect pacing outside the store for several minutes before the robbery. When the suspect entered the store, W-1 saw the suspect point a gun at them. W-1 jumped over the counter and ran out of the store. W-1 described the suspect as a Black male in his 30s, light complexion, 5'5" to 5'6" in height, wearing black pants, a black shirt, a black hoodie, and a blue/gray/white ski mask, and carrying a black cross-body bag. W-1 said the suspect was armed with a black handgun that had an odd-shaped barrel and could have been a BB gun. W-2 also stated that they noticed the suspect pacing outside before the robbery. W-2 said the suspect told them to open the register at gunpoint and put money into a large gray bag. W-2 emptied two registers into the bag, and the suspect demanded Newport cigarettes. W-2 told the suspect there were no more Newports. The suspect then fled eastbound on Pennsylvania Avenue SE. W-2 estimated that the suspect obtained approximately $200 in United States currency. W-2 described the suspect as a Black male in his 30s, light complexion, the same height as W-1 (i.e., 5'6"), skinny build, wearing all black clothing and a multi-color ski mask, and carrying a large gray bag.

As depicted in the still images included below, video surveillance from inside the 7-Eleven captures the suspect carrying what appears to be a black and gray duffle bag. The suspect is also

4

depicted wearing a blue and white gaiter-style face mask, a dark baseball cap, a black jacket or hooded shirt, and black shoes with white soles and three white stripes on the sides.

 

*Surveillance of 10/21 7-Eleven Robbery Depicting Gaiter, Sneakers, and Duffle Bag*

Incident to Defendant's November 28, 2022, arrest, law enforcement recovered sneakers with three white stripes and a blue and white gaiter, consistent with those observed in the 7-Eleven surveillance footage, which are depicted below:

 

*Sneakers and Gaiter Recovered During Defendant's November 28 Arrest*

<u>October 26, 2022, Armed Robbery of McDonald's, 1539 Pennsylvania Avenue SE</u>

On Wednesday, October 26, 2022, at approximately 10:10 a.m., an armed robbery of the McDonald's restaurant located at 1539 Pennsylvania Avenue SE, Washington, D.C., occurred.

5

The suspect entered the restaurant wearing a face mask, hat, hoodie, and red glove. The suspect then loitered inside for several minutes. W-3, an employee of the restaurant, went into the men's bathroom to clean it. While W-3 was inside, the suspect entered the bathroom. The suspect pointed a gun at W-3 and began yelling "money" several times. W-3 had to pull out their phone to translate what else the suspect was saying, and the suspect grabbed it out of their hand. The suspect then grabbed the back of W-3 with his gloved hand and, with a gun in his other hand, walked W-3 out of the bathroom and to a nearby door that leads to the area where the cash registers are located. The suspect ordered W-3 to open the door, and W-3 complied. The suspect demanded that money be put into his black and gray duffle bag, and W-4 put the money from the register (approximately $500 in United States currency) into the bag. At approximately 10:31 a.m., the suspect took the bag and walked out of the restaurant while tucking the gun into his waistband.[1]

On October 28, 2022, W-3's phone was "pinging" in the area of 12th and K Streets SE. MPD detectives investigated and learned that a cleaning person had found the phone on October 27, 2022, between 1:00 p.m. and 2:00 p.m., in a stairwell of the Hopkins Apartments, 1000 12th Street SE, Washington, DC. The cleaning person turned the phone in to the rental office, from which it was recovered by MPD.

---

[1] On October 26, 2022, W-5, a concerned citizen, called 911 and reported that they had seen the suspect running in the 1300 block of K Street SE at approximately 1:15 p.m. W-5 did not witness the robbery but had received a crime alert about it. W-5 said that the suspect was wearing a gray and black jacket, a dark gray or blue shirt, black or gray pants (which they described as "whitewashed"), a blue surgical mask, and a light afro hairstyle. W-5 observed the suspect go into 1317 K Street SE. W-5 later called 911 and reported seeing the same individual on November 6 and 13, 2022. MPD detectives reviewed surveillance footage from the property and determined that the person W-5 observed was not the suspect. W-5 was informed that the person they had observed was not the suspect and was provided a still photograph of the suspect.

As depicted in the still images included below, video surveillance depicts the suspect. The suspect is depicted wearing a blue and white gaiter-style face mask; a baseball cap; a dark hooded jacket with a white zipper, a white zippered pocket on the right chest, an oval emblem on the left chest, and white sides; a red glove; gray and black jeans; black sneakers with white soles and "HOKA" in white lettering on the sides. The suspect is also depicted carrying a black and gray duffle bag.




*Surveillance of 10/26 McDonald's Robbery*   *Shoes Seized During 12/2 Search Warrant Execution*



*Surveillance of 10/26 McDonald's Robbery*



*Jacket Seized During 12/2 Search Warrant Execution*



*Surveillance from 10/26 McDonald's Robbery*



*Jeans Seized During 12/2 Search Warrant Execution*

8

The jacket, jeans, and shoes were recovered during the execution of a search warrant at E.C.'s apartment in Washington, D.C., on December 2, 2022. E.C. has been in a romantic relationship with Defendant, and E.C.'s electronic benefits card was found in Defendant's possession when he was arrested on November 28, 2022.

### *November 9, 2022, Armed Robbery of 7-Eleven, 1501 Independence Avenue SE*

On Wednesday, November 9, 2022, at approximately 5:33 a.m., an armed robbery of the 7-Eleven convenience store located at 1501 Independence Avenue SE, Washington, D.C., occurred. The suspect entered the 7-Eleven store and walked around for several minutes. The suspect then walked behind the cash register area and pointed a black handgun at W-6, an employee. The suspect threw a blue plastic bag on the ground and said, "give me all the money." W-6 opened one cash register, put an unknown amount of United States currency into the bag, and attempted to close the cash register to avoid giving larger bills to the suspect. The suspect became upset and said, "motherfucker, don't play with me and give me all the money." W-6 proceeded to open both registers and fill the bag with the remainder of the currency. The suspect then exited the store and fled on foot southbound on 15th Street SE towards Massachusetts Avenue SE.

As depicted in the still images included below, video surveillance from inside the store shows the suspect wearing a blue and white gaiter-style face mask; a baseball cap with a sticker on the visor; a dark hooded sweatshirt or jacket with an embroidered logo on the left chest and grey accents around the pockets; dark pants; and black sneakers with white soles and "HOKA" in white lettering on the sides.



*Surveillance from 11/9 7-Eleven Robbery*



*Shoes Seized During 12/2 Search Warrant Execution*



*Hat Seized During 12/2 Search Warrant Execution Execution*



*Surveillance from 11/9 7-Eleven Robbery*



*Jacket Seized During 12/2 Search Warrant*



*Surveillance from 11/9 7-Eleven Robbery*



*Gaiter from Defendant's 11/28 Arrest*

10

As discussed above, the gaiter was recovered incident to Defendant's November 28, 2022, arrest. The jacket, hat, and shoes were seized during the execution of a search warrant at E.C.'s residence on December 2, 2022.

### *November 22, 2022, Armed Robbery of U.S. Post Office, 600 Pennsylvania Avenue SE*

On November 22, 2022, at approximately 2:42 p.m., an armed robbery of the U.S. Post Office located at 600 Pennsylvania Avenue SE, Washington, D.C., occurred. The suspect walked up to teller counter, crouched down, and pulled a black handgun from his bag. W-7 and W-8, who are tellers, ran towards the back door while the suspect followed, pointing the handgun at them. The suspect turned his attention to W-9, an employee in the breakroom, pointing his gun at W-9 and demanding money. W-9 went to one of the cash registers and opened the drawer. The suspect became impatient and grabbed the cash drawer, emptying approximately $200 in United States currency into his bag on the floor. In the parking lot behind the post office, W-8 encountered W-10, a letter carrier, and told them the post office had been robbed. W-8 pointed to the suspect, who was running towards C Street SE.

W-8 and W-10 followed the suspect, and W-10 took the below picture of the suspect with their phone as the suspect mounted a bicycle in an alley off of C Street SE.[2] The bicycle—which is green with chrome accents and a tan leather seat—appears to be identical to the bicycle with which Defendant was arrested on November 28, 2022.

---

[2] On November 22, 2022, MPD officers stopped an individual in the 200 block of I Street SE in response to a lookout. It was determined that the individual was not the suspect.




*Photo Taken by W-10 on 11/22*          *Bicycle Seized from Defendant Incident to 11/28 Arrest*

As depicted in the still image included below, video surveillance from inside the U.S. Post Office depicts the suspect wearing khaki pants; a black jacket; a winter hat; and black sneakers with white soles and "HOKA" in white lettering on the sides. The video also depicts the suspect carrying a black and gray duffle bag.



*Surveillance from 11/22*          *Pants Seized from Defendant*          *Shoes Seized During 12/2*
*U.S. Post Office Robbery*          *Incident to 11/28 Arrest*              *Search Warrant Execution*

While processing the scene of the November 22, 2022, armed postal robbery, United States Postal Inspectors collected six latent prints from the register till and sent them to their lab for

12

analysis.  On November 30, 2022, a latent print examiner at the U.S. Postal Inspection Lab analyzed the latent prints and determined a latent print on a cash drawer insert divider from the register till was a positive match to Defendant.  Four latent fingerprints from the bottom of the cash drawer insert were determined not to be the fingerprints of Defendant, and the remaining latent fingerprint yielded inconclusive results.  The latent fingerprints were searched in the FBI's automated database but did not result in any additional identifications.

### *November 28, 2022, Armed Robbery of CVS, 2400 Richmond Highway, Arlington, VA*

On November 28, 2022, at approximately 7:40 a.m., an armed robbery of the CVS store located at 2400 Richmond Highway in Arlington, Virginia, occurred.  The suspect fled with United States currency and "bait money" that contained a GPS tracker.  The suspect was arrested shortly after trying to flee on a green bicycle, identical in appearance to the bicycle on which the suspect fled the November 22, 2022, armed robbery of the U.S. Post Office.

The suspect was identified as Defendant Mark Thomas Moore.  At the time of his arrest, Defendant possessed a blue bag containing approximately $356 in United States currency and the "bait money" from CVS containing the GPS tracker and a large black BB gun.  Defendant was in possession of khaki pants, identical in appearance to those that the suspect is depicted wearing during the November 22, 2022, armed robbery of the U.S. Post Office, and black sneakers with white soles and three white stripes on the side, identical in appearance to those the suspect is depicted wearing during the October 21, 2022, armed robbery of 7-Eleven.  He was also in possession of a blue and white gaiter-style face mask.

*     *     *

The nature and circumstances of these offenses, which involve multiple armed robberies

of businesses and a Post Office, weighs heavily in favor of pretrial detention. Armed robbery is a crime of violence, and in each of the four armed robberies charged in this case, Defendant pointed a handgun at another person to facilitate his crime. The danger posed by pointing a gun at another human being during the course of a robbery cannot be overstated. "The best outcome, if everything goes as planned during an armed robbery, involves a victim's being placed at risk and feeling terrified for his safety, possibly for years to come, and if things go wrong, someone—or multiple people—could be killed or seriously injured." *United States v. Lee*, 195 F. Supp. 3d 120, 129 (D.D.C. 2016). Despite this grave risk, over the course of a month, Defendant pointed a gun at another person repeatedly—at a 7-Eleven, at a McDonald's, at another 7-Eleven, and at a Post Office—placing the victim–employees, uninvolved customers, and himself at grave risk each time.

Defendant brandished a gun at employees of D.C. establishments because he intended to instill fear in them to ensure their compliance with his demands. This created the danger of a violent response, placing the safety of the employees, uninvolved civilians, and Defendant himself at risk. Each offense was separated by a number of days and allowed Defendant opportunity to reflect upon his conduct. He made the conscious decision to repeatedly victimize people at gunpoint for his own pecuniary gain. Indeed, the offenses appear to have involved some measure of premeditation and deliberation, as Defendant arrived disguised and equipped with a bag for the proceeds. The nature and circumstances of these offenses weighs heavily in favor of detention.

### B. The Weight of the Evidence

The weight of the evidence weighs heavily in favor of pretrial detention. As discussed at length in a recent opinion by Chief Judge Howell, the "weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." *United States v. Michael Blackson*, No. 23-CR-25 (BAH), ECF No. 18 at 20 (D.D.C. Feb. 6, 2023). This is a

"common-sense consideration," as "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Id.*

Here, the evidence against Defendant is robust. Defendant was arrested in the District shortly after robbing a CVS in Arlington, Virginia. He fled the robbery on a unique green bicycle—the same bicycle on which he fled the November 22, 2022, armed postal robbery. Once Defendant was established as a suspect, the Postal Inspection Service determined that he left a fingerprint inside the drawer of the cash register during the armed postal robbery. Defendant was also in possession of a large BB gun consistent with the gun used in the string of robberies. And, as depicted above, distinct clothing recovered from Defendant's person incident to arrest and from the apartment of his former romantic partner links Defendant to each of the robberies. Because the weight of the evidence is strong, it demonstrates that Defendant is a danger to the community and increases the risk that he will not return to Court. This weighs heavily in favor of detention.

### C.    **The Defendant's History and Characteristics**

The third factor, the history and characteristics of the person, also weighs heavily in favor of detention. Defendant has a prior robbery and other theft-related convictions going back a decade. Prior sentences of incarceration have been insufficient to deter his conduct, which is now escalating, and demonstrates that pretrial detention is necessary to incapacitate Defendant and protect the community.

In D.C. Superior Court case number 2013 CF3 001012, Defendant was charged by Complaint for the January 18, 2013, robbery of an Auntie Anne's employee in Union Station.

Defendant pleaded guilty and admitted to the following facts:

> [O]n January 18, 2013, at approximately 9:32 p.m., within Union Station, located at 50 Massachusetts Avenue NE, Washington, D.C., an employee of the Auntie Anne's Pretzel Shop was walking through Union Station with the day's business earnings contained in a green bag, which contained $1,748 in US Currency, and a check for approximately $440. As she was walking, Defendant approached her and demanded the money. The employee tried to flee, but Defendant caught up to her. A struggle ensued, during which time the employee fell to the ground. An eyewitness came over to help, and the eyewitness was also knocked to the ground during the struggle. Defendant made off with the green bag and escaped; security caught him outside of Union Station, but he no longer had with him the bag containing the cash and check.

(April 29, 2013, Proffer of Facts.) On July 12, 2013, Defendant was initially sentenced to 30 months, execution of sentence suspended as to all but 10 months, to be followed by 28 days of inpatient drug treatment and 18 months' of supervised probation. Defendant's probation was then revoked[3] on October 31, 2014, and he was resentenced to 22 months' incarceration.

Defendant has several other convictions, including an October 2016 D.C. shoplifting conviction (Super. Ct. case no. 2016 CMD 014200), an April 2018 Arlington, Virginia petit larceny conviction (Gen. Dist. Ct. case no. GC16003825-00), a March 2019 Falls Church, Virginia shoplifting conviction (Gen. Dist. Ct. case no. GC19000024-00), May 2019 Arlington, Virginia convictions for petit larceny and probation violations (Cir. Ct. case nos. CR19000265-01 through -05), and an October 2020 Arlington, Virginia shoplifting conviction (Gen. Dist. Ct. case no. GC20002578-00).

In addition, Defendant has repeatedly failed to return to Court. The Pretrial Services Report indicates that the D.C. Superior Court has issued bench warrants for Defendant for his

---

[3] The February 13, 2023, Pretrial Services Report states on page 6 that "probation expired satisfactorily on 6/5/2018." It is clear from the docket in 2013 CF3 001012 that probation was in fact revoked. The Pretrial Services Report may be referring to the term of supervised release that followed Defendant's second term of imprisonment.

failure to appear in court on 12 separate dates between February 2010 and August 2022. Such a repeated history of failing to comply with the terms of release further increases the need for incarceration to protect the community, as Defendant has demonstrated a willingness to violate even the most basic condition of release – the requirement to return to court.

For the past decade, defendant has repeatedly been convicted for crimes involving the theft of other's property in the District and Virginia. His criminal conduct has escalated, as he is now accused of using a gun to facilitate the theft of property from others in a string of armed robbery offenses. Defendant's unyielding criminal conduct, his demonstrated failure to comply with the conditions of probation (both in the District in 2014 and again in Arlington in 2019), and his repeated failure to return to Court all demonstrate that no condition or combination of conditions would be sufficient to assure the safety of the community were he to be released. Defendant's history and characteristics weigh heavily in favor of detention.

### D. Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs heavily in favor of detention. The charged offense involves the defendant's use of a dangerous weapon on multiple occasions in order to rob businesses and a Post Office. Over and over again, Defendant was willing to point a gun and place other human beings at grave risk in order to take money and property. His conduct created an incredibly dangerous situation for employees, uninvolved customers, and Defendant himself.

To be clear, the dangerousness of Defendant's conduct is not diminished by his apparent use of a BB gun as opposed to an operable firearm. The Supreme Court has held that an unloaded handgun is a "dangerous weapon," recognizing that a gun can be used as a bludgeon and that "the

17

display of a gun instills fear in the average citizen," thus "creat[ing] an immediate danger that a violent response will ensue."  *McLaughlin v. United States*, 476 U.S. 16, 18 (1986); *see also, e.g.*, *United States v. Johnson*, No. 21-1392, 2022 WL 412942, at *1 (3d Cir. Feb. 10, 2022) (not precedential) (quoting *McLaughlin* in support of its holding that a BB gun used during armed robberies was a "dangerous weapon" because of the "immediate danger that a violent response will ensue"); *United States v. Tate*, 999 F.3d 374, 378 (6th Cir. 2021) ("[T]he use of the phrase 'dangerous weapon' . . . encompasses not only objects that are per se dangerous, but also those that, by their objective appearance, create the possibility of danger."); *United States v. Bell*, 947 F.3d 49, 62 (3d Cir. 2020) (holding that a toy gun is a dangerous weapon); *United States v. Orr*, 312 F.3d 141, 143 (3d Cir. 2002) (holding that a dismantled pellet gun is a dangerous weapon in its own right given that it can be used as a bludgeon); *United States v. Martinez-Jimenez*, 864 F.2d 664, 667 (9th Cir.1989) ("The increased chance of an armed response creates a greater risk to the physical security of victims, bystanders, and even the perpetrators.  Therefore the greater harm that a robber creates by deciding to carry a toy gun is similar to the harm that he creates by deciding to carry an unloaded gun."); *United States v. Laughy*, 886 F.2d 28, 30 (2d Cir. 1987) (holding that an inoperable pellet gun is a dangerous weapon).

Defendant's use of a large handgun to commit a series of armed robberies plainly demonstrates his danger to the community.  This factor, as with the three prior factors, weighs heavily in favor of pretrial detention.

### III.  Conclusion

Over the course of five weeks, Defendant made the repeated decision to point a gun at other people in order to obtain money and property.  His incredibly dangerous conduct stopped only

because he was arrested and detained following the last of the robberies on November 28, 2022. The government respectfully requests that the Court issue an Order granting its motion that Defendant Mark Thomas Moore be held without bond pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

Dated: February 15, 2023    By:    /s/ Paul V. Courtney
Paul V. Courtney
D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
Federal Major Crimes Section
601 D Street NW
Washington, D.C. 20530
(202) 252-1719
paul.courtney@usdoj.gov